# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP2436-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Karene S. Marchan, Attorney at Law: |
| | Office of Lawyer Regulation, |
| |    Complainant, |
| |   v. |
| | Karene S. Marchan, |
| |    Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST MARCHAN

| | |
|---|---|
| OPINION FILED: | April 10, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|  COURT: | |
|  COUNTY: | |
|  JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|  CONCURRED: | |
|  DISSENTED: | |
|  NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

**2018 WI 30**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.    2016AP2436-D

STATE OF WISCONSIN                    :      IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Karene S. Marchan, Attorney at Law:**

**Office of Lawyer Regulation,**

        **Complainant,**

   **v.**

**Karene S. Marchan,**

        **Respondent.**

**FILED**

**APR 10, 2018**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1    PER CURIAM.    We review a report and recommendation of Referee James J. Winiarski approving a stipulation filed by the Office of Lawyer Regulation (OLR) and Attorney Karene S. Marchan.   In the stipulation, Attorney Marchan stipulated to the facts underlying the eight counts of misconduct alleged in the OLR's complaint and joined the OLR in jointly recommending a six-month suspension of her Wisconsin law license.   The referee agreed that a six-month suspension was appropriate.

¶2 Upon careful review of the matter, we uphold the referee's findings of fact and conclusions of law and agree that a six-month suspension is an appropriate sanction for Attorney Marchan's misconduct. We also find it appropriate to impose the full costs of this proceeding, which are $6,953.07 as of January 19, 2018, on Attorney Marchan. Since Attorney Marchan has already made restitution to her client, the OLR does not seek restitution and we do not impose it.

¶3 Attorney Marchan was admitted to practice law in Wisconsin in 1996. The most recent address furnished by Attorney Marchan to the State Bar of Wisconsin is in Oak Creek, Wisconsin. Attorney Marchan has no prior disciplinary history.

¶4 Attorney Marchan's law license was suspended, effective March 7, 2016, due to her willful failure to cooperate in the OLR's grievance investigation that formed the basis for this disciplinary proceeding. Her license has also been administratively suspended since October 2016 for failure to pay State Bar dues and failure to file an OLR trust account certificate.

¶5 On December 13, 2016, the OLR filed a complaint against Attorney Marchan alleging eight counts of misconduct. Attorney Marchan did not file an answer to the complaint, and the OLR moved for default judgment. The referee was appointed on March 22, 2017. Attorney Marchan did appear at a telephonic scheduling conference in April 2017, and she subsequently filed a response and affirmative defenses in May 2017.

¶6 On August 24, 2017, the parties filed a stipulation whereby Attorney Marchan withdrew her response and affirmative defenses and pled no contest to all eight counts of misconduct set forth in the OLR's complaint. Attorney Marchan agreed that the referee could use the allegations of the complaint as an adequate factual basis in the record for a determination of misconduct as to each of the eight counts.

¶7 In its complaint, the OLR had sought a nine-month suspension of Attorney Marchan's law license and had also sought an order requiring her to pay restitution to her client in the amount of $76,730.56. The stipulation noted that since the filing of the OLR's complaint, Attorney Marchan had voluntarily made full restitution to the client. The OLR deemed Attorney Marchan's voluntary payment of the full amount as a substantial mitigating factor in assessing the appropriate level of discipline. Accordingly, the OLR director modified his sanction recommendation and sought an order suspending Attorney Marchan's law license for six months.

¶8 The stipulation averred that it was not the result of plea bargaining. Attorney Marchan verified that she fully understood the misconduct allegations to which she stipulated; fully understood her right to contest the matter; fully understood the ramifications of her entry into the stipulation; fully understood that she had the right to consult counsel; and stated that her entry into the stipulation was made knowingly and voluntarily. The referee agreed that a six-month suspension was an appropriate sanction for Attorney Marchan's misconduct.

3

¶9 The misconduct alleged in the OLR's complaint arose out of Attorney Marchan's representation of S.C. S.C. was acquainted socially with Attorney Marchan. S.C. hired Attorney Marchan in July 2014 to substitute as her counsel in a divorce pending in Milwaukee County circuit court. The divorce was contentious with allegations of marital waste on both sides, and it had been pending for two years. Attorney Demetra Christopoulos represented S.C.'s husband from May 2013 through the conclusion of the case. The Honorable Marshall B. Murray was the assigned judge.

¶10 Attorney Marchan did not have a law office, and she met with S.C. either at S.C.'s home or in parks. Attorney Marchan was apparently attorney of record in only one other matter pending in the Wisconsin court system at the time she represented S.C.

¶11 S.C. believed that she signed a fee agreement providing that Attorney Marchan would be paid at the conclusion of the divorce, but S.C. was unable to locate a copy of the agreement. Invoices prepared by Attorney Marchan charged her time at $200 per hour.

¶12 At the time Attorney Marchan substituted as counsel for S.C., S.C.'s prior attorney was holding over $162,000 in trust from the sale of a farm owned by the parties. Each party had received half of the proceeds to be held in trust by their respective counsel until the conclusion of the divorce. S.C.'s prior attorney transferred the funds she was holding to Attorney Marchan on July 28, 2014. Attorney Marchan opened a trust

4

account at PNC Bank and deposited S.C.'s funds into that account. No other client funds were deposited in the account after S.C.'s funds were placed there.

¶13 At a pretrial conference on July 23, 2014, Judge Murray issued an order setting a contested hearing date of December 1, 2014. The order also set dates for the completion of discovery. Judge Murray allowed each of the parties to remove $12,000 from the funds being held in trust for living expenses and to pay attorney fees. On July 31, 2014, Attorney Marchan made two cash withdrawals from the trust account, one in the amount of $10,000 and one in the amount of $2,000. Attorney Marchan represented that the $10,000 disbursement went to S.C. and that the $2,000 disbursement went to Attorney Marchan for fees.

¶14 On August 5, 2014, Attorney Christopoulos served S.C., via Attorney Marchan, with interrogatories. Attorney Marchan failed to timely respond. On September 23, 2014, Attorney Christopoulos filed a motion for contempt based on S.C. and Attorney Marchan's failure to respond to the interrogatories and to otherwise comply with the scheduling order.

¶15 Judge Murray conducted a contempt hearing on October 29, 2014. Attorney Christopoulos informed Judge Murray she had received some of the requested information on October 4, 2014, and that Attorney Marchan had provided some additional materials the day before the contempt hearing. Attorney Marchan told the court she had been meeting with S.C. at S.C.'s home about three days of every week from late afternoon until as late as

5

11:00 p.m. in an effort to prepare the information requested by Attorney Christopoulos.

¶16 Judge Murray declined to find S.C. in contempt and encouraged the parties to resolve the matter. He warned S.C. and Attorney Marchan that if they were not prepared to proceed to trial on the scheduled date and if they did not comply with his orders, they may lose the opportunity to present evidence.

¶17 S.C. subsequently told the OLR that Attorney Marchan's visits to her home were not for the purpose of discussing the divorce but instead were unscheduled social visits initiated by Attorney Marchan. S.C. told the OLR she did not need Attorney Marchan to provide her emotional support and that Attorney Marchan talked about her own marital problems during these meetings.

¶18 In mid-November 2014, Attorney Marchan provided Attorney Christopoulos a written proposal to divide the marital assets. The parties and counsel later met to discuss a settlement but could not reach an agreement. On November 26, 2014, Attorney Marchan filed a petition to have a guardian ad litem appointed for S.C. She had not discussed the appointment of a guardian ad litem with S.C.

¶19 On December 1, 2014, Judge Murray conducted a contested divorce hearing. He denied Attorney Marchan's petition for the appointment of a guardian ad litem for S.C. Attorney Marchan then moved to withdraw as counsel, but Judge Murray denied that motion as well. The divorce hearing lasted a

6

full day but the case was not concluded, and Judge Murray continued the matter to March 10, 2015.

¶20 Attorney Marchan requested that she be allowed to disburse an additional $10,000 from the funds she was holding in trust for payment of her attorney fees. Judge Murray did not review Attorney Marchan's billing statement but granted the request and signed an order on December 5, 2014, allowing each party to withdraw $5,000 from funds being held in their respective trust accounts for living expenses and an additional $10,000 for payment of attorney's fees. Attorney Marchan disbursed $10,000 for her fees from the trust account and also disbursed $5,000 to S.C.

¶21 Immediately after the December 1, 2014 hearing, Attorney Marchan provided S.C. a billing statement charging $34,813.85 in legal fees but told S.C. the amount was negotiable. This was the first bill Attorney Marchan had provided to S.C., despite her normal practice of billing clients on a monthly basis. S.C. told the OLR that if she had been aware of the amount of fees Attorney Marchan was charging she would have terminated the representation.

¶22 Between December 1, 2014 and the continued hearing date of March 10, 2015, Attorney Marchan did not contact S.C. to prepare for the hearing. S.C. tried to contact Attorney Marchan via email numerous times but received no response.

¶23 On March 9, 2015, one day prior to the continued hearing date, Attorney Marchan hand-delivered a letter to Judge Murray asking that the case be adjourned due to her illness.

7

Attorney Marchan charged S.C. for mileage to the court to deliver the adjournment request. Judge Murray granted the adjournment request and rescheduled the final divorce hearing for June 22, 2015.

¶24 On May 15, 2015, Attorney Marchan emailed S.C. proposing that they meet "to go over a budget for the remainder of your case." Attorney Marchan acknowledged that their original agreement called for her to be paid at the conclusion of her case, but said "as the case has continued so long we need to set up payment arrangements." At this point, Attorney Marchan had been representing S.C. for less than one year. Attorney Marchan said that she was owed over $30,000 by S.C. and that having such a large account receivable was hurting her ability to join a good law firm.

¶25 In mid-May 2015, S.C. sent a communication to Attorney Marchan attempting to terminate her representation due to her failure to communicate with S.C., failure to respond to S.C.'s questions, and failure to prepare for the final hearing. S.C. subsequently emailed Attorney Marchan raising numerous concerns about the billing and saying they needed to discuss it. No meeting ever took place.

¶26 On June 12, 2015, Attorney Marchan emailed S.C. saying she would be filing a motion to withdraw as counsel. On June 15, 2015, Attorney Marchan sent S.C. via email the motion to withdraw that she had filed, along with two invoices. One invoice was dated June 12, 2015, indicating that $31,429 was due. An updated invoice was dated June 15, 2015, adjusting the

8

total amount owed to $35,257.75. The June 15 invoice included $2,520 in additional charges for "trial preparation" or "file preparation" that Attorney Marchan claimed to have performed prior to June 12, 2015, but which did not appear on the June 12 bill. Both invoices also included numerous charges in connection with Attorney Marchan's withdrawal from the representation, including researching her ethical obligations and traveling to the Milwaukee County courthouse to file the motion to withdraw. The motion to withdraw as counsel that Attorney Marchan filed with the court requested that Judge Murray issue an order allowing her to withdraw $35,247.75[1] from S.C.'s funds being held in trust.

¶27 Attorney Marchan appeared for the June 22, 2015 final divorce hearing. Judge Murray met with Attorney Marchan and Attorney Christopoulos in chambers about Attorney Marchan's motion to withdraw. S.C. was late getting to court for the hearing and was not present for Judge Murray's consideration of the motion to withdraw. Judge Murray allowed Attorney Marchan to make a statement on the record. Attorney Marchan said:

> . . . in my motion, I asked for payment of my attorney fees at that point. It is my understanding we have come to an agreement with opposing counsel that I would be paid $20,000 right now out of the funds in my firm's trust account and the remainder of that would be decided, depending upon outcome of the case and I also discussed with you under the terms of my retainer

---

[1] There is no indication in the record why the amount stated in Attorney Marchan's court filing was $10 less than the amount stated in the June 15, 2015 invoice she sent to S.C.

9

payment agreement, I will be, we will go to either the binding arbitration through the State Bar of Wisconsin or the Milwaukee Bar Association for the remaining issues.

¶28 Judge Murray signed an order allowing Attorney Marchan to withdraw and reduced the amount to be paid to Attorney Marchan to $20,000.  Attorney Marchan then had an exchange with Judge Murray about the funds she was still holding in trust and Judge Murray directed that the funds be transferred to Attorney Christopoulos.

¶29 Attorney Marchan never submitted the fee dispute for any remaining claimed amount to either the State Bar of Wisconsin Fee Arbitration Program or the Milwaukee Bar Association's Committee on Resolution of Fee Disputes.

¶30 Once S.C. arrived for the divorce hearing, Judge Murray reconvened the case and took testimony.  Since Attorney Marchan had just been permitted to withdraw, S.C. was forced to proceed pro se.  She was also forced to proceed without any exhibits or documentary evidence because Attorney Marchan did not leave any of S.C.'s trial materials for her use during the contested hearing.

¶31 At the conclusion of the hearing, Judge Murray ruled that the remaining property would be divided equally and that there had not been marital waste by either party.  S.C. was awarded the marital home, which required that she make an equalizing payment to her ex-husband.  Judge Murray reiterated that Attorney Marchan would be paid $20,000 for attorney fees from S.C.'s funds being held in trust.  S.C. did not dispute

that amount because it was her understanding that it would be the last amount that she would have to pay Attorney Marchan. The findings of fact, conclusions of law, and judgment of divorce entered on July 20, 2015, reflected Judge Murray's ruling that Attorney Marchan would receive $20,000 for attorney fees from the funds held in trust. The divorce judgment also directed Attorney Marchan to disburse $38,556.14 to S.C.'s former husband from the parties' funds Attorney Marchan was holding in trust. Judge Murray awarded S.C. the remaining funds held by Attorney Marchan in trust after those two disbursements.

¶32 Following the final hearing, S.C. requested that Attorney Marchan return her file materials to her. Attorney Marchan refused to give S.C. her file unless S.C. paid for a copy that Attorney Marchan could keep for her own records. On June 22, 2015, Attorney Marchan issued a check payable to herself in the amount of $20,000 in payment of her fees as ordered by Judge Murray. On August 15, 2015, Attorney Marchan issued a check payable to Attorney Christopoulos's trust account in the amount of $38,556.14. After those disbursements, $76,730.56 remained from the S.C. funds deposited in Attorney Marchan's trust account. Despite repeated requests from S.C., Attorney Marchan did not disburse the remaining funds.

¶33 In August 2015, S.C. contacted the City of Oak Creek Police Department to report her fear that Attorney Marchan had stolen her funds. S.C. filed a grievance against Attorney Marchan in September 2015. Attorney Marchan requested an extension of time to respond and said she planned to offer S.C.

11

an opportunity to settle the fee dispute. The OLR authorized an extension of time for Attorney Marchan to respond. Attorney Marchan never did respond, and the OLR subsequently filed a motion requesting this court to order Attorney Marchan to show cause why her law license should not be suspended for willful failure to cooperate in the OLR's investigation. This court issued the requested order to show cause. Attorney Marchan failed to respond to it, and on March 7, 2016, this court issued an order temporarily suspending Attorney Marchan's license.

¶34 The OLR's complaint alleged that in total, Attorney Marchan paid herself $32,000 from the funds she held in trust in connection with S.C.'s divorce. The billing invoices that Attorney Marchan produced did not support fees in that amount, and Attorney Marchan failed to produce evidence to substantiate that she earned those fees or that she was entitled to additional fees beyond the $20,000 approved by Judge Murray for Attorney Marchan's representation of S.C. As of the date of filing of the OLR's complaint, $76,730.56 in S.C.'s funds remained on deposit in Attorney Marchan's client trust account.

¶35 The OLR's complaint alleged the following counts of misconduct:

**Count One:** By making two cash withdrawals from her client trust account on July 31, 2014, Attorney Marchan violated former SCR 20:1.15(e)(4)a.[2]

**Count Two:** By failing to take any action to resolve S.C.'s divorce between December of 2014 and June of 2015, Attorney Marchan violated SCR 20:1.3.[3]

**Count Three:** By failing to communicate or consult with S.C. regarding her case from December of 2014 through June of 2015 despite S.C.'s repeated requests, Attorney Marchan violated SCR 20:1.4(a)(2)[4] and SCR 20:1.4(a)(3).[5]

**Count Four:** By failing to deliver to S.C. funds held in trust which, per the Judgment of Divorce entered July 31, [sic][6] 2015, S.C. was entitled to receive, and which funds S.C. repeatedly requested, Attorney Marchan violated former SCR 20:1.15(d)(1).[7]

---

[2] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

Former SCR 20:1.15(e)(4)a provided: "No disbursement of cash shall be made from a trust account or from a deposit to a trust account, and no check shall be made payable to 'Cash.'"

[3] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[4] SCR 20:1.4(a)(2) provides: "A lawyer shall reasonably consult with the client about the means by which the client's objectives are to be accomplished."

[5] SCR 20:1.4(a)(3) provides: "A lawyer shall keep the client reasonably informed about the status of the matter."

[6] The actual date of the Judgment of Divorce was July 20, 2015.

[7] Former SCR 20:1.15(d)(1) provided:

(continued)

13

**Count Five:**  By failing to abide by Judge Murray's order awarding to S.C. the funds remaining in Attorney Marchan's trust account after the disbursements to S.C.'s ex-husband and to Attorney Marchan for her fees, Attorney Marchan violated SCR 20:3.4(c).[8]

**Count Six:**  By claiming she was entitled to additional fees, which included charges to the client for activities that advanced her interests rather than the client's, charges that were retroactively billed despite not appearing on earlier invoices, and after having already received $32,000 for a divorce representation that lasted less than one year and nevertheless being unprepared to proceed in that litigation, Attorney Marchan violated SCR 20:1.5(a).[9]

**Count Seven:**  By failing upon termination of the representation to return S.C.'s file materials to her, Attorney Marchan violated SCR 20:1.16(d).[10]

---

Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing.  Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

[8] SCR 20:3.4(c) provides:  "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

[9] SCR 20:1.5(a) provides:  "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses."

[10] SCR 20:1.16(d) provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and

(continued)

14

**Count Eight:** By failing to cooperate with the OLR's investigation of the S.C. grievance, Attorney Marchan violated SCR 22.03(2)[11] and SCR 22.03(6),[12] enforceable via SCR 20:8.4(h).[13]

¶36 The referee's report and recommendation found that the OLR met its burden of proof with respect to the eight counts of misconduct set forth above. With respect to the appropriate level of discipline, the referee noted that prior to entering

---

property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[11] SCR 22.03(2) provides:

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[12] SCR 22.03(6) provides: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[13] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

into the stipulation, Attorney Marchan had made full payment of the remaining funds in her trust account to S.C. as ordered by Judge Murray. Based on that payment, the referee noted the OLR reduced their request for a suspension of Attorney Marchan's law license from nine months to six months.

¶37 The referee noted that the OLR argued in its memorandum in support of a six-month suspension that Attorney Marchan had essentially abandoned S.C. in the divorce case, and the OLR cited several cases dealing with the issue of abandonment in support of the request for a six-month suspension. Although the referee did not agree that Attorney Marchan "abandoned" S.C., he nevertheless agreed that a six-month suspension was appropriate.

¶38 The referee said he could reasonably infer that Attorney Marchan lacked experience in divorce cases, had a limited legal practice, and used poor judgment in becoming involved in a complicated divorce on behalf of someone she knew socially. The referee said that Attorney Marchan failed to keep her client advised of substantial charges for legal services and failed to communicate with her client for long periods of time. The referee noted Attorney Marchan was also experiencing her own personal difficulties at the time she was representing S.C., which caused the referee concern about Attorney Marchan's fitness to practice law in a professional manner.

¶39 The referee said he was particularly concerned about the need to protect the public, the courts, and the legal system from the repetition of Attorney Marchan's misconduct, and he

16

agreed with the OLR that a six-month suspension was appropriate because it would require Attorney Marchan to petition for the reinstatement of her license and prove that she was then fit to practice law. The referee further recommended that Attorney Marchan be responsible for the full costs of the disciplinary proceeding.

¶40 This court will adopt a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶41 We adopt the referee's findings of fact and conclusions of law that Attorney Marchan violated the supreme court rules as alleged in the eight counts set forth above. We further agree with the referee that a six-month suspension of Attorney Marchan's license to practice law in Wisconsin is an appropriate level of discipline. Since no two cases are precisely the same, there is no standard sanction for any particular misconduct. We note that in In re Disciplinary Proceedings Against Joset, 2008 WI 41, 309 Wis. 2d 5, 748 N.W.2d 778, an attorney's license was suspended for six months for ten counts of misconduct involving three clients. The misconduct included failing to advance the clients' interests, failing to respond to the clients' requests for information, and

17

failing to comply with court orders. In addition, in In re Disciplinary Proceedings Against Christnot, 2004 WI 120, 275 Wis. 2d 289, 685 N.W.2d 788, an attorney's license was suspended for six months for failing to keep a client reasonably informed about the status of a matter, failing to promptly comply with reasonable requests for information, and failing to cooperate with the OLR's investigation of the grievance. We find the misconduct at issue here to be somewhat analogous to that in Joset and Christnot, and we find a similar suspension to be appropriate. We also deem it appropriate, as is our usual custom, to impose the full costs of this disciplinary proceeding on Attorney Marchan. Since Attorney Marchan has already made full restitution to S.C., we order no further restitution.

¶42 IT IS ORDERED that the license of Karene S. Marchan to practice law in Wisconsin is suspended for a period of six months, effective the date of this order.

¶43 IT IS FURTHER ORDERED that within 60 days of the date of this order, Karene S. Marchan shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $6,953.07.

¶44 IT IS FURTHER ORDERED that the temporary suspension of Karene S. Marchan's license to practice law, which was effective March 7, 2016, due to Karene S. Marchan's willful failure to cooperate in the Office of Lawyer Regulation's grievance investigation which gave rise to this disciplinary proceeding, is hereby lifted.

¶45  IT IS FURTHER ORDERED that, to the extent that she has not already done so, Karene S. Marchan shall comply with the provisions of SCR 22.26 concerning the duties of a person who is licensed to practice law in Wisconsin has been suspended.

¶46 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement.  See SCR 22.28(3).[14]

---

[14] In addition to obtaining reinstatement from the disciplinary suspension imposed by this order, before she is able to practice law in Wisconsin, Attorney Marchan will also be required to complete the procedures for reinstatement from the administrative suspensions currently in effect for failure to comply with the mandatory CLE reporting requirements, for failure to pay applicable bar dues and assessments, and for failure to file a trust account certificate.